McDONALD, by Guardian *ad litem*, Respondent, v. AETNA CASUALTY & SURETY COMPANY, Appellant, SCHUBERT and another, Defendants.

*No. 269. Argued April 29, 1970.—Decided June 2, 1970.*
(Also reported in 177 N. W. 2d 101.)

236

For the appellant there was a brief by *Beckwith & Hollern* of Madison, and oral argument by *Richard A. Hollern*.

For the respondent there was a brief by *Johns, Flaherty, Harman & Gillette* of La Crosse, and oral argument by *Robert D. Johns*.

ROBERT W. HANSEN, J. On its appeal, Aetna takes three swings at plaintiff's contention that the policy issued to the meat market partnership covers the father-partner and the automobile owned individually by him. Two are clear misses, but the third cut at the ball knocks plaintiff's claim of Aetna's liability out of the ball park.

*Does the Aetna policy cover the partnership only?*

The Aetna policy, naming the 1950 Chevrolet sedan as the described automobile, lists the named insured as:

"Frank Schubert Meat Market
(Willard Schubert and Frank W. Schubert d/b/a)
1311 Market St., La Crosse, Wis."

Aetna argues that the named insured is the partnership as an entity, not the partners as individuals. The separate entity versus aggregate of individual partners' argument is no stranger to this court. Under common-law doctrine, Wisconsin has held a partnership to be no more

than an aggregate of individual partners.[1] Under the Uniform Partnership Act as adopted in Wisconsin,[2] the concepts of entity and aggregate are commingled. For some purposes, notably the conveyance of property and the holding of title to property, the partnership is considered to be a separate entity.[3] In other situations, the aggregate concept of the partnership as ". . . an association of two or more persons to carry on as co-owners a business for profit," [4] has been recognized by this court as continuing and controlling.[5] While the entity-aggregate concepts have and will continue to collide,[6] here, particularly because the Aetna policy names the partnership as the insured and then goes on to list the names of the individual partners in describing the named insured, we hold that the policy must be read to cover the partners as individuals, as well as the parnership as an entity.

[1] ". . . the reasoning of many cases before this court is based upon the theory that a partnership has no entity distinct and apart from the persons who compose it. . . ." *Westby v. Bekkedal* (1920), 172 Wis. 114, 120, 178 N. W. 451.

[2] Ch. 178, Stats. For a discussion of the history and background of the entity-aggregate debate, *see* Jensen, *Is a Partnership Under the Uniform Partnership Act an Aggregate or an Entity*, 16 Vand. L. Rev. (1963), 377, 384, concluding, "It is now apparent from the foregoing that whether a partnership is to be regarded as an entity under the act will and should be governed by the particular question to be decided by the appellate court of the particular state jurisdiction . . . ."

[3] Secs. 178.05, 178.07, Stats.

[4] Sec. 178.03 (1), Stats.

[5] *Thomas v. Industrial Comm.* (1943), 243 Wis. 231, 239, 10 N. W. 2d 206, stating: "There has been some effort to escape this by arguing that the partnership should be treated as an entity, but it is well established that the Uniform Partnership Act is founded upon the aggregate, and not on the entity theory so far as all substantive rights, liabilities, and duties are concerned. Whatever recognition is given to the entity theory in the partnership act is solely for procedural or conveyancing purposes . . . ."

[6] *See Kalson v. Industrial Comm.* (1946), 248 Wis. 393, 21 N. W. 2d 644, holding the partnership, not the individual partner, there to be considered to be the employer under the Workmen's Compensation Act.

*Does the "use of other automobile" clause in the Aetna policy apply to the partners as individuals?*

Even if, as we have held, the named insured is considered to include the partners as individuals, Aetna contends that use of "any other automobile" clause [7] is nonapplicable here because the automobile named in the policy is the automobile of the partnership, not a private passenger car owned by an individual partner. While the automobile described in the policy, the 1950 Chevrolet, is owned in the name of the partnership, the application of the aggregate, rather than entity concept, necessarily implies that the individual partner has ownership rights in the described partnership property. Actually, the Uniform Partnership Act provides that the individual partner has rights in specific partnership property,[8] setting forth the incidents of such property rights, including the right of possession.[9] We hold that the interest of the partner in the automobile owned by the partnership is a sufficient property interest to invoke or bring into operation the nonowned automobile clause in the Aetna policy.

*Does the exclusion from coverage of named insured-owned "other automobiles" apply?*

Aetna takes its third swing at the ball with the contention that, even if the father-partner is covered individually under its policy and even if the father-partner

---

[7] "If the named Insured is an individual or husband and wife and if during the policy period such named Insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, . . . with respect to said automobile applies with respect to any other automobile, . . ."

[8] "A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership." Sec. 178.21 (2), Stats.

[9] Sec. 178.21 (3), Stats.

is held to be an owner of the automobile described in the policy, the exclusion from coverage of other automobiles owned by the insured applies. There is no way around this argument. The policy specifically provides that there can be no coverage under the nonowned automobile clause for any liability of the insured which arises because of the use of an automobile owned by the insured.[10] The automobile involved in the accident is an automobile other than the one described in the policy. It is owned by the father-partner. So it is excluded from coverage under the terms of the policy.

On the day before oral arguments in this case, a well-known figure in the entertainment world, Herb Shriner, was killed in a highway accident in Florida. At the time of his death the Hoosier humorist owned forty-one automobiles. Counsel for plaintiff was asked if a liability policy on any one of his automobiles would cover the other forty. He answered, "Yes, if it was involved in an accident under the circumstances here existing." The exclusion of other automobiles owned by the insured has the obvious purpose of preventing this result. Otherwise a person could take out a policy of liability on one automobile and thereby secure coverage for all other automobiles which he might own.[11] A car owner can insure all of the automobiles he owns, but he cannot do so under a policy describing only one such automobile, and specifically excluding all others.

Neither the direct statutory liability of a father for negligence of his son under certain circumstances,[12] nor

---

[10] "(d) This insuring agreement does not apply:

"(1) to any automobile owned by or furnished for regular use to either the named Insured or a member of the same household other than a private chauffeur or domestic servant of such named Insured or spouse; . . ."

[11] *National Farmers Union Property & Casualty Co. v. Maca* (1965), 26 Wis. 2d 399, 405, 132 N. W. 2d 517; *Giese v. Karstedt* (1966), 30 Wis. 2d 630, 637, 141 N. W. 2d 886.

[12] Sec. 343.15 (2), Stats., provides: "Any negligence or wilful misconduct of a person under the age of 18 years when operating

cases dealing with such liability where the son was driving an automobile not owned by the father,[13] alter the applicability of the insured-owned automobile exclusion clause to the fact situation here present. The obligation of Aetna is spelled out and controlled by the terms of the automobile liability policy it issued. Under the terms of that contract there is no coverage.

Two insurance companies are named as defendants in this action. One—Continental—issued a policy on the 1955 Chevrolet automobile involved in the accident. There is no dispute as to coverage under this policy. The other —Aetna—issued a policy on the 1950 Chevrolet automobile owned by the meat market partners, and specifically excluding other automobiles owned by the partners. The Aetna policy cannot be read or stretched to cover the 1955 Chevrolet owned by the father-partner.

*By the Court.*—Judgment reversed, with directions to enter a judgment dismissing the complaint as to the defendant, Aetna Casualty & Surety Company.

a motor vehicle upon the highways is imputed to the person who signed the application for such person's license. The person who so signed is jointly and severally liable with such operator for any damages caused by such negligent or wilful misconduct." *See: Behringer v. State Farm Mut. Automobile Ins. Co.* (1957), 275 Wis. 586, 82 N. W. 2d 915; *Groth v. Farmers Mut. Automobile Ins. Co.* (1963), 21 Wis. 2d 655, 124 N. W. 2d 606.

[13] *Klatt v. Zera* (1960), 11 Wis. 2d 415, 105 N. W. 2d 776; *Mancheski v. Derwae* (1960), 11 Wis. 2d 467, 105 N. W. 2d 773; *Asleson v. Hardware Dealers Mut. Fire Ins. Co.* (1960), 11 Wis. 2d 624, 106 N. W. 2d 330.